645 A.2d 184

Joseph KILEY, III, a Minor, by His Parents and Natural Guardians, Joseph and Deborah KILEY, Jr. and Joseph and Deborah Kiley, Jr. In Their Own Right and Michael Laycock, a Minor, by His Parent and Natural Guardian, Deborah Kiley, and Deborah Kiley In Her Own Right, Appellees,

v.

CITY OF PHILADELPHIA, Appellant,

and

Robert Miner, Doing Business As Robert Miner Company and Dorothy Carroll and Patricia Johanson, Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 6, 1993.

Decided July 1, 1994.

Alan C. Ostrow, Judith Harris, Philadelphia, for City of Philadelphia.

Carol F. Kafrissen, Philadelphia, for the Kileys.

John Ledwith, Philadelphia, for R. Miner.

J. Gordon Cooney, Philadelphia, for P. Johanson.

Joseph W. Fullem, Jr., Philadelphia, for D. Carroll.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of the City of Philadelphia (Appellant) from the unreported memorandum opinion and order of the

Commonwealth Court affirming in part and reversing in part the order of the Court of Common Pleas of Philadelphia County entering summary judgment in its favor, after finding Appellant, the City of Philadelphia, not liable for injuries sustained by Joseph Kiley, III (Joseph) in a tragic accident on April 28, 1985, which has left him in a permanent vegetative state.

Joseph, by his parents, Joseph and Deborah Kiley, Jr., (Appellees) filed the instant action alleging that in 1985, Appellant had possession of an abandoned row house located on the corner of Rosehill and Thayer Streets in the City of Philadelphia, and that Appellant hired a demolition Company, Robert Miner, Inc. (Miner) to demolish the house. Appellees further alleged that during the demolition, bricks and debris from the house fell onto the abutting sidewalk and street, and that community residents complained to Appellant about the dangerous conditions of the demolition site and the adjacent sidewalk and street. As a result of these complaints, Appellant erected barricades around the bricks and debris so that pedestrians would not walk on the affected sidewalk and street, but would be required to walk around the barricades on unobstructed sidewalks and the street.

On April 28, 1985, little Joseph, then only five years old, accompanied by other children, walked on the street near the demolition site to an ice cream truck parked nearby. While walking on the street he was struck by an uninsured motor vehicle operated by Patricia Johanson (Johanson), leaving him permanently injured with "spastic quadriplegia" and in a "vegetative state".

Appellees brought suit against Miner and the City of Philadelphia, inter alia, alleging that their actions in blocking the sidewalk and street and not providing an alternate sidewalk was a substantial factor in bringing about Joseph's injuries. Appellees also sued the police department, alleging that although help had been requested through the police emergency telephone number, police assistance was slow contributing to the seriousness of Joseph's injuries.

Appellant filed an answer and new matter alleging governmental immunity as a defense and alleging that the accident occurred 45–60 feet past the demolition site in the middle of the intersection and that, therefore, Appellant's actions could not have been a substantial factor in causing the accident. The Honorable Abraham Gafni of the Court of Common Pleas of Philadelphia County agreed with Appellant and granted summary judgment in its favor. The Commonwealth Court affirmed that portion of the trial court's order granting summary judgment for the actions of the police in arriving at the accident scene late, but reversed on the question of whether Appellant's control of the street and sidewalk area around the demolition site were substantial factors bringing about the accident. That court concluded that sufficient facts were pled in Appellees' complaint to establish that Appellant's conduct in maintaining the sidewalk and street created a dangerous condition which, in some part, directly caused Joseph's injuries and, under such circumstances, it would be better to allow a jury to determine the exact extent of the liability of Appellant to Appellees. *Kiley v. Miner,* 148 Pa.Commonwealth Ct. 637, 611 A.2d 378 (1992).

We granted further review to examine this case in light of our recent decision in *Crowell v. Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992), which held that pursuant to the Political Subdivision Tort Claims Act a municipality can be held liable in damages only for its acts of active negligence, and *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), where we concluded that the real estate exception to the rule of immunity is applicable only in those cases where it is alleged that the dangerous conditions of the land itself causes an injury and not merely when it facilitates injury by acts of others, whose acts are outside of the Political Subdivision Tort Claims Act's scope of liability.

We begin our analysis of this case, first, by noting that under our previously decided cases we have made clear that the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564, is a legislatively imposed shield of government immunity against any damages on account of any injury to any

person or property by any act of a local agency or employees thereof or any other person, except as provided in the statute itself. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). Because of the clear intent to insulate government from exposure to tort liability for any of its acts, exceptions carved out by the Legislature from this general rule are strictly construed. *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988); *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989).

■ The pertinent exceptions to the statute which Appellees argue expose Appellant to liability are the exception to real property and sidewalks, 42 Pa.C.S. §§ 8542(b)(3) and (b)(7), which provide respectively:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .

(7) Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

For the real property exception of immunity to apply, we have required a showing that the artificial condition or defect

of the land itself caused an injury, not merely that it facilitates injury by acts of others, because their acts are outside the scope of the Tort Claims Act. *Mascaro; Snyder.* The same can be said for the sidewalk exception inasmuch as we have applied this standard to an interpretation of the sovereign immunity statute's real estate, highway and sidewalk exception, 42 Pa.C.S. § 8522(b)(4), and because we have indicated that we would interpret both statutes consistently where they deal with similar subject matter. *Crowell v. Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992).

In *Crowell* we had the opportunity to correct the misperception that our decision in *Mascaro* abolished all joint tortfeasor liability against local agencies, because of our insistence therein, that a local agency could not be responsible for the acts of others or for acts which merely facilitate an accident. We were careful to explain that as a matter of statutory construction, the Legislature had insulated local agencies from liability for those injuries which could be imputed to it based upon a theory of vicarious liability, but could still be found responsible as a concurrent joint tortfeasor regardless of how many other tortfeasors contributed by their wrongdoings to the injury of another. Applying the classically accepted understanding of a concurrent joint tortfeasor we concluded that a local agency would be responsible in damages to an injured party where its actions have no legal relationship to the actions of other tortfeasors, where the local agency owes a duty to the injured party independent from the duties owed by the other tortfeasors to the injured party and where the negligence of the local agency is determined to be a direct cause of the injuries sustained by the injured party—in short, does not merely facilitate an injury.

Since these acts would be sufficient to preclude it from obtaining indemnity from another tortfeasor for the injuries rendered to the third party, they would fall within the scope of the statute's exceptions to sovereign and governmental immunity. *Crowell,* 531 Pa. at 412–413, 613 A.2d at 1184.

Turning to the facts of this case, Appellees argue that Appellant and Miner allowed bricks and debris to accumulate

on a sidewalk forcing Joseph to walk in the street because no safer route was provided where he was hit by Johanson's automobile. Acts of the local agency which make the sidewalk unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Thus, accidents which arise out of the use of the sidewalk in its unsafe condition would constitute a "dangerous condition" and would fall within the exception to local agency immunity.

It is not enough, however, for a claimant to assert that the sidewalk constituted a dangerous condition. Appellees were also required to demonstrate that the dangerous condition of the sidewalk *itself* caused Joseph's injuries. We have consistently maintained our view that the focus of the negligent act involving a use of government owned or controlled land (including streets and sidewalks) must be the actual defect of the land itself and that the rule of immunity can be waived only in those cases where it is alleged that the artificial condition or defect of the land itself causes the injury. *Mascaro, Snyder, Crowell.* Here, it is alleged that the condition of the sidewalk made it impossible for its intended use, but Joseph was not injured while using the sidewalk. In fact, the allegations of Appellees' complaint indicate that because of the condition of the sidewalk it could not be used and that, therefore, Joseph was walking on the street when he was injured by the Johanson vehicle. Nor is it alleged that there were any defects on the street or that the artificial condition of the street itself caused Joseph's injuries. What Appellees are really arguing is that the Appellant knew or should have known that by obstructing the sidewalk they were forcing people to walk on the street, thereby creating an inherently dangerous condition and should have taken action to prevent any harm from occurring. As appealing as this theory is, it is not supported by any exception to our immunity statute.

At most, the condition of the sidewalk merely facilitated Johanson in injuring Joseph and as we have made clear such

acts are outside the scope of the exceptions to the Political Subdivision Tort Claims Act.

Accordingly, that portion of the order of the Commonwealth Court reversing the trial court's order granting summary judgment is reversed, and the order of the Court of Common Pleas granting the Appellant's motion for summary judgment is reinstated.

LARSEN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a Dissenting Opinion.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.*

CAPPY, Justice, dissenting.

I respectfully dissent.

On April 28, 1985, Joseph Kiley, III, a five year old boy, was struck by an uninsured motor vehicle, leaving him permanently injured with spastic quadriplegia and in a permanent vegetative state. Appellees have alleged that Joseph's injuries were a direct and proximate result of a dangerous condition created by barricades erected by Appellant. The barricades allegedly blocked a sidewalk and one-half of a street and provided no safe alternate walkway, thus forcing Joseph into the street where he suffered his catastrophic injuries. The majority concludes that the dangerous condition of the sidewalk "itself" did not, as a matter of law, cause Joseph's injuries. According to the majority, the dangerous condition, at most, merely "facilitated" the driver in injuring Joseph, and, therefore, Appellees' action does not fall within either the

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

"real property" or "sidewalk" exceptions to governmental immunity. 42 Pa.C.S. §§ 8542(b)(3) and (7). This is error.[1]

In *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), this Court addressed the misperception that our decision in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), abolished all joint-tortfeasor liability against local agencies. We explained that our decision in *Mascaro* provided only that a local agency was immune from liability for injuries which could be imputed to it under a theory of vicarious liability, but did not abrogate a finding of liability where the local agency was found liable for an injury caused jointly with another tortfeasor. The distinction, "succinctly stated, [is that] vicarious liability imposes liability on a person by virtue of his relation to the tortfeasor, whereas joint liability is imposed on a person by virtue of actions taken in concert with another tortfeasor." *Crowell*, 531 Pa. at 409, 613 A.2d at 1182 (footnote omitted). While the majority in the case *sub judice* correctly notes the holding in *Crowell* initially, it then distorts that very holding to reach a result which I believe is inconsistent with, and, indeed, not supported by our prior decisions.

The majority employs language from *Mascaro* wherein this Court stated that the artificial condition or defect of the land *itself* must *cause* the injury, and not merely *facilitate* the injury, in order for the exception to immunity to apply, to conclude that the exception does not apply because Joseph was not physically on the sidewalk at the time he was injured. In so doing, the majority has extended the meaning of the phrases "merely facilitated" and "itself caused the injury" beyond that which was clearly intended in *Crowell* and *Mascaro* and has reached a result wholly unsupported by our

1. Arguably, the "streets" exception to governmental immunity, as further pled by Appellees, is also implicated where the dangerous condition could conceivably be comprised of not only the demolition of Appellee's real estate, and the sidewalk covered by debris necessitating barricades, but also the condition of Appellee's street. The record before us could easily support the conclusion that in the absence of an alternative walkway, the presence of abandoned vehicles further exacerbated the impact of Appellee's barricades, thus directing Joseph even further into the street.

decision in *Crowell.* Indeed, the majority has craftily disembowelled the entire holding in *Crowell.* Moreover, in so concluding, the majority has also effectively eviscerated traditional concepts of causation in negligence actions as applied to state and local government.

What this Court clearly held in *Crowell* was that the real estate exception does not apply absent evidence demonstrating a causal connection between the injury and the real estate within a local agency's control. This Court unequivocally stated that our holding in *Mascaro* as set forth above was meant only to preclude the imposition of liability upon a governmental unit based upon a theory of vicarious liability, but not upon a theory of joint liability. Where a causal connection is established between the injury and the real estate, or as in the instant matter, the sidewalk, we did not abrogate the local agency's liability.

Notably, the "sidewalk" exception at issue here provides that in order for a claimant to recover he or she must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency knew, or should reasonably have known, of the dangerous condition prior to the accident so as to enable it to have taken measures to correct the dangerous condition. 42 Pa.C.S. § 8542(b)(7).[2] Given the evidence of record in support of Appellees' allegations that the condition of the sidewalk created a reasonably foreseeable risk of the type of harm here suffered, the majority is patently wrong in finding insufficient support for an exception. To the contrary, if

---

2. Sidewalks.—A dangerous condition of *sidewalks within the rights-of-way of streets owned by the local agency,* except that the claimant to recover must establish that the dangerous condition *created a reasonably foreseeable risk of the kind of injury which was incurred* and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

42 Pa.C.S. 8542(b)(7) (emphasis added).

Appellees are able to establish the existence of a dangerous condition, and a causal connection between that condition and Joseph's injuries, the exception will apply.

Appellant's purported liability arises from *its own* actions in erecting barricades without further precautions, which is not grounded upon either imputed or constructive fault and thus merely derivative of some other actor's conduct. It is conduct alleged to be a direct cause of the severe trauma and devastation of life suffered by Joseph. Appellant and the operator of the motor vehicle bore no legal relation to one another. Each of them owed an independent duty to Joseph, and, upon proper proof, a jury could reasonably determine that the conduct of Appellant gave rise to a dangerous condition that was a substantial factor in bringing about the harm suffered by Joseph. If such a determination were made, there would exist no basis for indemnification of Appellant by the operator of the motor vehicle. Therefore, pursuant to *Crowell,* the negligence of Appellant could support the conclusion that Appellant was a joint tortfeasor.

To the extent that the majority relies upon *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), for its conclusion that the dangerous condition alleged could not *itself* have caused Joseph's accident, such reliance is misplaced. In *Snyder,* this Court found that a dangerous condition arising from a deep strip mine in close proximity to a highway did not fall within an exception to immunity. *Snyder* requires *only* that the dangerous condition originate from or have as its source Commonwealth realty. Unquestionably, Appellees have alleged and the evidence of record could support a finding that the dangerous condition in the matter *sub judice* originated from and had as its source Appellant's property. Thus, I must conclude that the majority is invading the province of the jury to determine whether Appellant was a joint tortfeasor. The only other conceivable conclusion is that the majority has impliedly determined that the conduct of the other driver was a superseding intervening cause of the accident. However, such a determination is clearly unwarranted under the facts of the matter *sub judice.*

In *Crowell,* we determined that "since the basis of the jury's verdict was the active negligence of the City's employee misplacing a directional sign, and not merely the City's status along the chain of causation, the verdict against the City was proper, and this Court's decision in *Mascaro* [was] not a basis for the City's assertion of immunity." 531 Pa. at 413, 613 A.2d at 1184–85. The facts of the matter *sub judice* are not unlike those in *Crowell,* where the jury was permitted to determine whether the dangerous condition created a reasonably foreseeable risk of the kind of injury suffered, and whether the acts of the City were a substantial factor in bringing about the harm suffered.

Obviously, in *Crowell,* the sign *itself* did not cause the injuries, but rather, it was the dangerous condition created by the sign, which the jury determined created a reasonably foreseeable risk of the kind of injury that was incurred: namely, an automobile accident after a driver moved across the center line of a highway in response to misdirection provided by the sign. In my opinion, the facts of the matter *sub judice* are not distinguishable where the catastrophic injuries suffered by Joseph are alleged to have been directly caused by the Appellant's negligence in erecting sidewalk barricades, which quite arguably could have directed Joseph into the street. Based upon the evidence of record at the time Appellant moved for summary judgment, I believe the jury should be permitted to determine whether a dangerous condition existed and if so, whether it created a reasonably foreseeable risk of the type of harm suffered by Joseph.

Accordingly, I would affirm the decision of the Commonwealth Court, and remand this matter to the Court of Common Pleas of Philadelphia County, Civil Division.