**Jeannette M. OSBORNE, an individual and Administratrix of the Estate of Stephen K. Osborne, Deceased,**

v.

**CAMBRIDGE TOWNSHIP, Appellant.**

**Jeannette M. Osborne, an individual and Administratrix of the Estate of Stephen K. Osborne, Deceased, Appellant,**

v.

**Cambridge Township.**

Commonwealth Court of Pennsylvania.

Argued June 17, 1999.

Decided July 16, 1999.

Reargument Denied Sept. 24, 1999.

John O. Dodick, Erie, for appellant.

Louis M. Tarasi, Jr., Pittsburgh, for appellee.

Before PELLEGRINI, J., FLAHERTY, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Jeannette M. Osborne, individually and as Administratrix of the Estate of her deceased husband, Stephen K. Osborne (Osborne or Decedent), appeals from an order of the Court of Common Pleas of Crawford County (trial court) denying her motion to mold the verdict and award Rule 238 delay damages and post-verdict interest. Cambridge Township (Township) has filed a cross-appeal from that order denying its post-trial motions as well.

This case arises as a result of an automobile accident that occurred around 9:30 p.m. on July 28, 1993, in which Osborne was killed. At the time of the accident, it was dark and raining hard because a storm had just gone through the area, making for poor visibility on the road on which Osborne was driving his pick-up truck. Osborne was driving along Route T680/Center Road (Center Road), a two-lane gravel road with barbed wire on the side of the road and trees on the property inside the barbed wire. Although the speed limit was 55 miles per hour, Osborne, who had a blood-alcohol level of .191 at the time,[1] was driving approximately 72 miles per hour when he went over a knoll

---

1. The coroner, Charles Winek, *M.D., testified* that a person with a .191 blood-alcohol content would be significantly intoxicated, and *would not have the sensory motor and judg-*ment functions necessary to safely operate a motor vehicle. (N.T. at pp. 89, 100.)

and soon after struck a large fallen oak tree – approximately 54 inches in circumference – that was lying in a dip in the road across both lanes.[2] He died instantly.

Osborne's wife, acting in her capacity as Administratrix, filed wrongful death and survival actions against the Township alleging, *inter alia,* that the fallen tree was within its right-of-way and that it was negligent in its failure to take measures to warn the public that the large tree had fallen across one of its roads for which it had received timely notice. At the jury trial, the Township Road Master, Lawrence Tapper (Roadmaster Tapper), Township Supervisor Patrick Herman (Supervisor Herman), and a Township road worker Trace Fosburg (Roadworker Fosburg), testified that they had never received any complaints prior to the accident that the fallen tree needed maintenance or that it was rotting. Even Edward Styborski (Supervisor Styborski and abutting Landowner), the owner of the property on both sides of Center Street where the accident occurred and also a Township supervisor, testified that the fallen tree was fully leafed when it fell and he never complained that it required maintenance.

As to when the Township received notice and had an opportunity to respond to the tree in the road, Supervisor Styborski testified that when he went out that night, he saw the downed tree and told his wife to call one of the other supervisors. He could not recall, however, at what time he told his wife to make the call but thought

it might have been a few hours before the accident occurred. Betty Styborski (Mrs. Styborski) testified that after her husband told her to make the phone call, she placed a call at 9:00 p.m. to Supervisor Herman but only spoke with his wife who told her he was sleeping. She further stated that she again called Supervisor Herman but when she reached Mrs. Herman instead, she told her there had been an accident.

Contrary to Mrs. Styborski's testimony, Mrs. Herman testified that she received a call from Mrs. Styborski at 9:30 p.m. regarding the fallen tree, but told her that her husband was sleeping and to call someone else. Mrs. Herman also stated that Mrs. Styborski called again at 9:50 p.m. but spoke to her husband because he was getting up to go to work at his night shift position. Supervisor Herman's testimony echoed his wife's regarding the phone calls, but he also testified that even if he had gotten up at 9:30 p.m. to attend to the tree, it would have taken him approximately 20–30 minutes to get to the Township building to get barricades to put on the road and reach the tree. Similarly, Roadmaster Tapper stated that he heard about the accident on his police scanner between 9:15 and 9:30 p.m. but no one called him prior to that time to notify him that a tree was down.

The only evidence that the Township had possibly received notice in time to respond to the downed tree was Roadworker Fosburg's testimony that he spoke to Roadmaster Tapper one week after the accident and was told by him that Supervi-

---

2. At oral argument, the Township stated that it had no police department but its streets were patrolled by the Pennsylvania State Police. State Trooper Adam Falkenburg testified at trial that upon arriving at the scene of the accident, he observed that the base of the tree that had fallen was level with the hood of Osborne's pick-up truck. (N.T. at p. 15.) He further stated that after the initial impact with the fallen tree, the pick-up truck went under the tree, causing an additional impact with another tree, and then the pick-up truck came to rest off an embankment. (N.T. at p. 16.)

Daniel Aerni, a traffic engineer who reconstructed accident scenes, testified on behalf of the Township and stated that there was about 500 feet from the crest of the hill to the dip where the tree was lying on the road, and that Osborne would have been able to see something in the road with his headlights illuminated. (N.T. at p. 45.) He further testified that he determined that Osborne was travelling at 72 m.p.h. upon impact with the tree; however, if he had used his brakes prior to hitting the tree, his estimation of the speed that he was travelling would have been higher.

sor Herman had received notice of the fallen tree an hour prior to the accident.

■ Apparently considering the Decedent's condition and speed at which he was travelling at the time of the accident, the jury determined that he had been 25% negligent while the Township had been 75% negligent, and returned a verdict in favor of his estate for a total of $3,892,243.20 ($2,455,187.46 for the wrongful death action and $1,437,055.80 for the survival action). At the conclusion of the trial, the Township filed a motion for post-trial relief arguing that the judgment should have been entered in its favor and requesting a new trial, remittitur and a molding of the verdict.[3] The Administratrix filed motions to mold the verdict[4] and award Rule 238 delay damages and post-verdict interest. The trial court denied the Township's request for post-trial relief except for its motion for remittitur, which was granted with respect to the survival action award in that it was reduced to zero. The trial court also molded the jury's wrongful death verdict of $2,455,187.46 by Osborne's comparative negligence of 25% resulting in a verdict of $1,841,390.60. From that figure, $5,000 was subtracted for first-party insurance benefits that were paid. The total delay damages were then calculated to be $315,-255.53[5] and the verdict was reduced to the statutory cap of $500,000 plus the delay damages for a total verdict of $813,255.53. The trial court entered judgment in favor of the Administratrix against the Township with costs and interest at the rate of 6% from the date of the verdict. Both the Township and the Administratrix filed appeals from that decision which are now before this Court.[6]

## I.

As to the notice requirement under 42 Pa.C.S. § 8542(b)(4), the Township only contends that the trial court erred by refusing its request for a new trial because Roadworker Fosburg was permitted to testify as to a hearsay statement made to him by Roadmaster Tapper that Supervisor Herman had an hour's notice of the fallen tree prior to the accident. More specifically, Roadworker Fosburg testified that one week following the accident, he was informed by Roadmaster Tapper that Supervisor Herman told him that he had received notice of the fallen tree one hour prior to the Decedent's accident and had done nothing in response. Although the trial court found that the Township had failed to object to this testimony at trial and had waived any further right to object

3. The Township requested remittitur (the process by which a jury verdict is diminished by subtracting portions of its award) alleging that the jury erroneously awarded a double recovery for both the wrongful death and survival actions and included damages for Decedent's guidance, tutelage and moral upbringing of his children; and it also failed to deduct the amount of Decedent's personal maintenance from the amount awarded. The Township also requested a molding of the verdict to reflect a cap on the amount awarded pursuant to the Political Subdivision Tort Claims Act, *infra*, so that the award would be capped at $500,000 for both the wrongful death and survival actions.

4. Countering the Township's request, the Administratrix requested that the verdict be molded to reflect an award of $1,000,000, arguing that the wrongful death action and survival action were separate actions and the award should not be capped at $500,000 for both.

5. Regarding delay damages, the trial court calculated them at 9.5% from June 29, 1996 to December 31, 1996, for a total of $88,901.43, and from January 1, 1997 through December 31, 1997, it calculated delay damages at 9.25% for a total of $169,866.13. Finally, for the period from January 1, 1998 through April 24, 1998, delay damages were calculated at 9.5% for a total of $54,487.97.

6. Our scope of review of the trial court's order denying the Township's motion for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Cipolone v. Port Authority Transit System of Allegheny County*, 667 A.2d 474 (Pa.Cmwlth.1995).

to the testimony, the Township argues that it did raise a hearsay objection at trial.

Whether the issue is preserved is determined by the following exchange between Christine Hurnyak (Ms. Hurnyak), Counsel for the Administratrix; Roadworker Fosburg; John Dodick (Mr. Dodick), Counsel for the Township, and the Court:

Q. (by Ms. Hurnyak) Now, back in— I'm going to take you back to 1992 which would have been the year before the accident with Mr. Osborne. And I'm going to ask, did it come to your attention that a report had been made about a problem with trees on the Center Street Extension at the Styborski property?

A. (by Roadworker Fosburg) I had overheard Eddie Styborski and Larry Tapper.

MR. DODICK: Your Honor, I'm going to object to this overhearing, I think, it's hearsay.

THE COURT: Well, it depends on whether he's going to testify to prior inconsistent statements. They both testified.

MR. DODICK: Yeah.

THE COURT: Why don't you come to side bar and you can tell me what he's going [sic] say at side bar.

*SIDE BAR:*

THE COURT: Is he going to say something inconsistent?

MS. HURNYAK: Yes.

THE COURT: What's he going to say?

MS. HURNYAK: Well, Mr. Tapper had denied that he had any report of a problem but Mr. Fosburg is going to say that Mr. Tapper and Mr. Styborski discussed the problem at the township building on more than one occasion.

THE COURT: Mr. Tapper said they never talked about the problem in the Township.

MS. HURNYAK: Correct.

THE COURT: Is he going to say anything else?

MS. HURNYAK: He was at the scene the night of the accident and he is going to talk about a conversation that he had with Mr. Tapper about a week after the accident.

MR. DODICK: And what's—I mean, I don't understand. What is that conversation going to be?

MS. HURNYAK: That it's going to have to do with the notice on the night of the accident.

THE COURT: What's he going to say?

MS. HURNYAK: He's going to talk about how Mr. Tapper said that because the call came in like more than [sic] hour before the accident and Herman didn't do anything, that Herman is going to get us sued yet.

MR. DODICK: I don't understand. What is the evidence that call came in before, more than [sic] hour before the accident?

THE COURT: Well, if Mr. Tapper said that, then obviously that indicates— I guess, you could put him on and he could deny it or what are—I think, that's evidence in this case if he said he had a call—that Herman had a call an hour before. That's an inconsistency with the testimony that Herman certainly said.

Although the Administratrix argues that the objection initially made to Roadworker Fosburg's testimony regarding the trees on the road, the sidebar explained the objection also went to his testifying about the discussion between Roadmaster Tapper and Supervisor Herman. The trial court overruled that objection finding that while it was hearsay, it was an admission against interest. As can be seen from the reading itself, this testimony was objected to by counsel for the Township.

The Township then argues that the trial court erred by allowing that testimony into evidence because it was not an

admission against interest. Roadworker Fosburg's testimony would have only been an admission against interest if he had been told by Supervisor Herman himself that he failed to take any action for over an hour. Instead, Roadworker Fosburg was going to testify about what Roadmaster Tapper was told by Supervisor Herman, and such testimony constitutes hearsay upon hearsay or double hearsay. In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. *Commonwealth v. Scott*, 503 Pa. 624, 470 A.2d 91 (1983). This requirement is satisfied where *each* statement comes within an exception to the hearsay rule. *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982). Because Roadmaster Tapper's statement would not be an exception to hearsay, the trial court erred by allowing this testimony in. Additionally, because this evidence was insufficient as to whether the Township had time to respond by placing barricades to block the road, i.e., notice, we would normally remand this case for a new trial on this basis alone. However, because of the manner in which we have disposed of the other issues, a remand is not necessary.

## II.

■ The Township also contends that the trial court erred by refusing to grant judgment in its favor because there was insufficient evidence offered at the trial to establish that the tree which Osborne struck with his pick-up truck was within its care, custody and control and would be an exception to the immunity afforded the Township under the Political Subdivision Tort Claims Act, also known as the Governmental Immunity Act, 42 Pa.C.S.

§ 8541.[7] The section which provides the exception is found at 42 Pa.C.S. § 8542(b)(4) and states the following:

> *Trees, traffic controls and street lighting.—A dangerous condition of trees,* traffic signs, lights or other traffic controls, street lights or street lighting *under the care, custody or control of the local agency,* except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency *had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event* to have taken measures to protect against the dangerous condition. (Emphasis added.)

A "sufficient period" is determined by the amount of time reasonably required to take protective measures, including inspections required by law. 42 Pa.C.S. § 8542(c). The time determination shall be made with reference to the actual equipment, personnel and facilities available to the local agency and competing demands therefore. *Id.*

■ In this case, none of the elements necessary to fall within the exception were met. First, no evidence was entered that the fallen tree was within the Township's care, custody or control because there was no evidence that the tree was on Township property or the open portion of the Township's road right-of-way. When the Administratrix sought to establish through the questioning of Supervisor Styborski that the tree that fell had stood on the Township's right-of-way, an objection was made by the Township's counsel that was sustained by the trial court.[8]

---

7. 42 Pa.C.S. § 8541 provides, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8501 defines "local agency" as, "[a] government unit other than the Common-

wealth government. The term includes an intermediate unit." Under this definition, the Township is a local agency and is subject to the provisions of the Sovereign Immunity Act. *See also Deluca v. Whitemarsh Township,* 106 Pa.Cmwlth. 325, 526 A.2d 456 (1987).

8. Regarding the discussion as to whether the tree stood on the Township's right-of-way, the

Moreover, no witness testified that the Township had performed work on the tree in question or that the tree was rotted. Supervisor Styborski stated that he was not aware of any work being performed on the trees along his property, including the tree that fell, and specifically stated that the tree that fell down was fully leafed and not rotted. Also, Roadmaster Tapper testified that there were no records indicating that work had been performed by the Township on the tree that caused Osborne's death or that anyone notified the Township that the tree was in a dangerous condition. Because there was no evidence to prove that the tree was under the Township's care, custody or control or that it had notice that the tree was defective, the "tree" exception to governmental immunity contained in 42 Pa.C.S. § 8542(b)(4) is not applicable.[9]

Even if the tree exception does not apply, the Administratrix nonetheless argues that the injuries are still actionable because the Township's negligence falls within the street exception to governmental immunity found at 42 Pa.C.S. § 8542(b)(6)(i). That section provides that the Township may be liable for:

A dangerous condition *of* streets owned by the local agency, except that the

claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency *had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.* (Emphasis added.)

As with the trees, traffic controls and street lighting exception, a sufficient period of time is determined by the amount of time reasonably required to take protective measure. 42 Pa.C.S. § 8542(c).

The Township argues that the tree was not a dangerous condition *of* the street but rather a dangerous condition *on* the street for which it was not liable. The Administratrix contends, however, that focus of the exception is whether a dangerous condition existed on the street or road that the governmental entity failed to timely abate.

Whether a dangerous condition must be "of" or "on" the road has been the subject of numerous cases involving the exceptions waiving immunity for both commonwealth agencies and local agencies relative to real property, highways, streets and utility fa-

following exchange took place between Supervisor Styborski, Administratrix's counsel, the Township's counsel, and the trial court:

Q. (by Administratrix's counsel) Okay. And going back to the day of the accident, did there come a time when a tree that was along the road there came down?
A. Right.
Q. And was that tree on the township right-of-way?
A. As far as I –
MR. DODICK (Counsel for Township): Objection, Your Honor.
THE COURT: Sustained.
MR. DODICK: I don't think this witness can testify to this.
THE COURT: You need more of a foundation if he is going [sic] testify to that. He can't thus far. Sustained.
(N.T. at p. 6.) When Supervisor Styborski was asked the same question again, the Township repeated its objection and the trial court again sustained the objection. Other than

Supervisor Styborski's testimony, Roadworker Fosberg was the only witness who was asked about the tree being in the Township's right-of-way, and as with Supervisor Styborski's testimony, Roadworker Fosberg's testimony was objected to by the Township and sustained by the trial court.

9. At oral argument, the Administratrix relied on Exhibit J – what she referred to as a survey of Center Road where the accident occurred – to establish that the fallen tree was in the Township's right-of-way. While Exhibit J was not in the reproduced record and the Administratrix did not raise this argument in her brief, we have, nonetheless, reviewed that exhibit and have determined that it is of no value whatsoever. The document is merely a hand-drawn rendering of Center Road and is not drawn to size. Additionally, even if it was an accurate depiction of Center Road, there is no indication that the tree prior to falling was in any port of the Township's right-of-way for which it would be liable.

cilities.[10] While there are major differences between them, at the core of them all is that immunity is waived for a "dangerous condition of" the real estate, highway, street, traffic signal or other type of improvement.[11]

When these exceptions were first construed, the analysis focused on whether the governmental conduct created or allowed to be maintained a "dangerous condition" that should have been corrected. Those initial cases interpreted the term "dangerous condition" broadly as a state of affairs that hampered or impeded or required correction. "[I]t is clear that circumstances here give rise to a condition that is related to travel on the highway and is conceivably correctable." *Wyke v. Ward,* 81 Pa.Cmwlth. 392, 474 A.2d 375, 379 (1984) (quoting the plurality decision in *Mistecka v. Commonwealth,* 46 Pa. Cmwlth. 267, 408 A.2d 159 (1979) (question as to whether dangerous condition existed where individuals were throwing rocks down at cars from bridge above state-maintained road)). Because the focus was on whether a condition was dangerous, it was a question for the fact finder and not to be determined by the court as a matter of law. *Wyke; see also Fidanza v. Commonwealth of Pennsylvania,* 655 A.2d 1076 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 542 Pa. 677, 668 A.2d 1138 (1995); *Department of Transportation v. Phillips,* 87 Pa.Cmwlth. 504, 488

A.2d 77 (1985) (relating to treatment of artificial defects prior to formulation of principle set forth in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987)).

But this approach to determine what was a dangerous condition was effectively superseded, *see Rippy v. Fogel,* 108 Pa. Cmwlth. 296, 529 A.2d 608, 610 fn. 1 (1987), by our Supreme Court's decision in *Mascaro* when it established the test that a "dangerous condition of" the real estate had to be one that was inherent in the property and directly caused the injury. By posing the test this way, the focus of the analysis changed from one that examined whether a "condition" was dangerous to an analysis that determined whether the condition is "of" the property. For example, if there was oil and grease on the public property and someone was injured as a result, that was not within the exception, no matter whether it was a dangerous condition because it was "on" the property but not "of" the property. The change in focus also changed the question from one of fact to one of law. Because the "dangerous condition" was known and because the plaintiff was required to plead it in the complaint, whether it was "of" the real property involved nothing more than a legal interpretation of whether known conduct fell within the words of an exception. Of course, if it was determined to be "of"

---

**10.** *See* 42 Pa.C.S. § 8522(b)(4) which provides:

A dangerous condition *of* Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5). (Emphasis added.)

We note that statutes dealing with governmental and sovereign immunity are to be interpreted consistently because they deal with indistinguishable subject matter. *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514, n. 4 (1998).

**11.** The only exception that does not have that core language is the real property exception for local agencies that waives immunity instead for acts arising out of "[t]he care, custody or control of real property in the possession of the local agency." Because this exception does not contain the "dangerous condition of" language contained in other exceptions, our Supreme Court in *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997) abandoned the "on-of" analysis for the real estate exception for local agencies. *See also Kilgore, supra; Snyder v. North Allegheny School District,* 722 A.2d 239 (Pa.Cmwlth. 1998).

the property, then it was a question for the fact finder.

However, in *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), our Supreme Court, in a case dealing with the highway exception and echoing pre-*Mascaro* cases, appeared to revert to an analysis that examined whether the governmental entity's conduct in allowing a "dangerous condition" to exist violated a public duty to keep the highway safe for the traveling public. In *McCalla v. Mura*, 538 Pa. 527, 649 A.2d 646 (1994), while deeply divided on other issues, our Supreme Court appeared to have extended the *Bendas* rationale to the street exception applicable to local agencies.

Shortly after *Bendas* was decided, though, our Supreme Court decided *Kiley v. City of Philadelphia*, 537 Pa. 502, 645 A.2d 184 (1994), a case involving what was a "dangerous condition of" a sidewalk. The Court returned to the traditional "on-of" analysis holding that where a child was permanently injured when he had to go into the street because the sidewalk next to a city-owned building was blocked by demolition material was not a defect of the real estate. It stated that "it is not enough to assert that the [real property] constituted a dangerous condition.... We have consistently maintained our views that the focus of the negligent act involv-

ing the use of government owned or controlled land ... must be the actual defect of the land itself and that the rule of immunity can be waived in those cases where it is alleged that the artificial condition or defect of the land itself causes the injury." *Id.* at 508, 645 A.2d at 187.

■ The last time that our Supreme Court addressed what was a "dangerous condition of" property was in *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), where again our Supreme Court applied an "on-of" analysis. In that case, a person was injured as a result of falling down on grease that accumulated on a city-owned sidewalk from cars that regularly parked on it; however, because the grease was on and not part of the sidewalk, it was held not to be a physical defect of the property. Under *Finn*, a two-prong analysis is employed: "first, a legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous." *Id.* at 604, 664 A.2d at 1346. Even though *Finn* involves the sidewalk exception, the reasoning is equally applicable to the highway exception but even more so because it distinguishes *Bendas*.[12]

---

**12.** We also have applied the "on-of" distinction in *Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa.Cmwlth. 1, 645 A.2d 1370 (1994), where there was a break in the fence along the turnpike that allowed a cow that escaped from a farm miles away to enter onto the turnpike causing a vehicle to be destroyed by a tractor-trailer truck. Finding that the cow was not a defect of the highway and the fence did not cause the accident, the court refused to hold that the exception applied.

*See also City of Philadelphia v. Melendez*, 156 Pa.Cmwlth. 271, 627 A.2d 234 (1993), where a driver was injured when her car collided with another vehicle because her view was obstructed by a car that was owned by the City of Philadelphia and was unlawfully parked along the curb of her street. She filed an action under 42 Pa.C.S. § 8542(b)(6)(i) alleging that the street exception to immunity applied because the street

and the car parked on the street were owned by the City of Philadelphia, the car was presumably placed on the street by a City of Philadelphia employee, and the City of Philadelphia must have known that a dangerous condition existed on the street. Rejecting Melendez's argument, this Court stated:

> The above-cited language (referring to Section 8542(b)(6)(i)) unambiguously states that the dangerous condition must be that *of* the street, not *on* the street. The condition must derive, originate from or have as its source the City's realty. (Citations omitted.) Accordingly, we conclude that even if the accident were caused by the presence of the city-owned vehicle parked on a City-owned street, as a matter of law, the streets exception to governmental immunity would not apply. (Emphasis in original.)
> *Id.* at 627.

■ Because *Finn* controls, the dangerous condition to fall within the street exception must arise from the real estate, street or sidewalk rather than from something that has fallen onto the real estate, street or sidewalk. Because the fallen tree was not "of" the real estate but "on" the real estate, the street exception to governmental immunity does not apply and judgment should have been entered in favor of the Township.[13]

Accordingly, the decision of the trial court is reversed.

## ORDER

AND NOW, this 16th day of July, 1999, the order of the Court of Common Pleas of Crawford County, dated September 14, 1998, is reversed.

---

**13.** Because of the way that we have resolved this case, we need not address the cross appeal raising issues related to the damages awarded.