Charlene CARPENTER, Appellant,

v.

Wilsie Jean PLEASANT and Wilsie Hughes and City of Chester.

Commonwealth Court of Pennsylvania.

Argued May 15, 2000.
Decided Aug. 7, 2000.
Reargument Denied Oct. 12, 2000.

Richard K. Teitell, Bala Cynwyd, for appellant.

Sheryl L. Brown, Media, for appellees.

BEFORE: COLINS, Judge,
FLAHERTY, Judge, MIRARCHI, Jr.,
Senior Judge.

FLAHERTY, Judge.

Charlene Carpenter (Appellant) appeals from an order of the Delaware County Common Pleas Court (Trial Court) which denied her Motion for Post–Trial Relief (Motion) to reverse the jury verdict which found that neither Appellant nor any of the Appellees were negligent.[1] Appellant alleged in her Motion that the trial court erred by not permitting Appellant's expert witness to testify regarding facts relating to a traffic light control device called a "Conflict Monitor" and that such facts could have led the jury to conclude that the City of Chester (City) was on notice of the dangerous condition of possible simultaneous double green lights and thereafter failed to install a Conflict Monitor which could have prevented such a dangerous condition. Trial Court denied her Motion. We reverse and remand the matter to the Trial Court.[2]

On August 22, 1995, at the intersection of Potter and 9th Streets (Intersection), Appellant was driving north on Potter Street. Wilsie Pleasant was driving east on 9th Street. The Intersection is controlled by traffic lights containing typical red, yellow and green signals. At the time of the accident, the traffic lights controlling the Intersection were illuminated green for all traffic on both Potter and 9th Streets. The City owned and was responsible for the maintenance and repair of the traffic signals at the Intersection. City police Officer Graves was present at the scene of the accident at the time it occurred, having arrived earlier to investigate an automobile accident which occurred immediately prior to the accident between Appellant and Pleasant. It was admitted that Officer Graves was aware of the malfunctioning traffic lights for only about five (5) seconds prior to this accident.

Appellant sought damages from the driver of the other car, the owner of the

---

1. Appellant filed a Motion under Pennsylvania Rule of Civil Procedure No. 227.1 which incorporates all forms of post-trial relief into one rule. Although Appellant has requested that the verdict be reversed, when there are errors claimed in the admission or exclusion of evidence, a new trial is more properly the subject of the motion rather than judgment notwithstanding the verdict. *Stewart v. Cher-* *nicky*, 439 Pa. 43, 266 A.2d 259, 266 (1970). Consequently, in the absence of any such issue being raised, Appellant's Motion will be treated as a motion for a new trial.

2. Counsel for all parties filed a Joint Statement of the Case setting forth undisputed facts and issues surrounding this appeal.

other car and the City of Chester, collectively, Appellees, for her personal injuries alleging that all the traffic lights in the Intersection were green at the same time, that the City was on notice of the possibility of such a dangerous condition and that the City is liable for her injuries.

At the trial, Appellant called as her witness, William Conrad (Conrad), who testified to the following:

a) He has been employed by Signal Services Inc. since 1989 as General Manager, Vice–President and, currently a partner;

b) He has worked in the traffic signal business since 1983;

c) Signal Services Inc. has been in business since 1955; performing traffic signal maintenance and repair services to at least 100 municipalities in Pennsylvania, including the City of Chester; and

d) He is familiar with the traffic signal equipment at the Intersection as it existed on the date of the accident.

During Conrad's testimony, Counsel for the City objected to Appellant being permitted to elicit any testimony regarding the operation and function of the Conflict Monitor and Trial Court conducted a side-bar conference with counsel (R. 25a–35a ), during which the issue of the admissibility of testimony by Conrad with respect to Conflict Monitors was discussed. Appellant sought to have Conrad provide the jury with facts about a Conflict Monitor which had not been installed on the traffic signal controlling the Intersection despite the City's receipt of a letter from Penn-DOT in the late 1970's strongly suggesting the installation of traffic monitors (R. 58a). Appellant contends that the jury could conclude from that testimony that the City possessed the requisite notice that a dangerous double green situation could occur. Appellant's attorney made an offer of

proof to the trial judge that Conrad was prepared to testify "about what a Conflict Monitor does" (R. 27a, 1.23–25), more specifically, that:

1. A Conflict Monitor is a device installed on traffic signal controllers which senses or determines the existence of a double green light (the same situation at the time of the accident).

2. If a double green light exists, the Conflict Monitor forces the traffic signal to automatically switch to a flash mode (flashing signals), preventing double continuous green signal.

3. Conflict Monitors were available for installation for approximately twenty years prior to the date of the accident.

Trial Court refused to permit Appellant to present such factual testimony regarding Conflict Monitors unless Appellant was willing to also present opinion evidence from a qualified expert that 1) a Conflict Monitor would have prevented a double green light from occurring and 2) even if a Conflict Monitor had been installed, it would have functioned correctly and would not have been broken at that time, also. Subsequently, the jury found that neither the Appellant, nor any of the Appellees were negligent or liable. Appellant then filed the Motion raising the same objections raised at trial regarding the failure of Trial Court to permit witness Conrad to testify. Trial Court's denial of the Motion was appealed.[3]

■ The subject matter of this appeal is limited to the City of Chester's liability under the traffic light exception to governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S.

---

3. Our scope of review of the trial court's order denying the Township's motion for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Osborne v. Cambridge Twp.*, 736 A.2d 715 (Pa.Cmwlth.1999).

§ 8542(b).[4] Under this section, Appellant had the burden to prove that the City had requisite notice of the malfunctioning lights.

Appellant asks this Court to determine whether or not the trial judge's refusal to allow testimony about the lack of a Conflict Monitor on the traffic lights at the Intersection was a reversible error of law which controlled the outcome of the case by severely prejudicing the Appellant's ability to present critical evidence which could have led the jury to a proper conclusion that the City had received the requisite notice and dangerousness required for liability. Appellant argues that if the jury had the information about Conflict Monitors and their operation, it would have been able to make an informed decision about whether or not the City was on notice that a dangerous double green traffic signal could occur and whether the City reasonably should have installed the device to prevent the dangerous double green light.

City argues that Appellant was required to prove that the City of Chester had notice of a "dangerous condition" in sufficient time for City to take action to repair. City then asserts that Appellant must prove that the traffic lights, without Conflict Monitors, constitute a dangerous condition. City argues that the trial court correctly held that Conrad is not an expert because he would not provide an *opinion,* that an expert opinion is required to prove 1) that traffic lights without a Conflict Monitor constitute a dangerous condition; 2) that City had a duty to place a Conflict Monitor at the Intersection; and 3) that a Conflict Monitor would have definitely functioned properly and would have prevented the accident.

In general, questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a finding of abuse of discretion. *Burkholz v. Department of Transportation,* 667 A.2d 513 (Pa.Cmwlth.1995). The improper exclusion of relevant material evidence is, however, grounds for a new trial. *Salameh v. Spossey,* 731 A.2d 649 (Pa. Cmwlth.1999); *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973).

The fundamental consideration in determining the admission of evidence is whether the evidence is relevant to the fact to be proved. Pennsylvania Rules of Evidence No. 402 (Pa.R.E.402). *American Auto Wash, Inc. v. Department of Envit'l Protection,* 729 A.2d 175 (Pa.Cmwlth. 1999).[5] Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Pa. R.E. 401.[6] All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Relevant evidence, however, may be excluded if its probative value is outweighed by the danger of unfair prejudice. Pa.R.E. 403.[7]

Consequently, if the testimony of the witness is relevant to the elements to be

---

4. Specifically, § 8542(b)(4) provides an exception to governmental immunity for injuries caused by dangerous traffic controls provided that, "... the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition."

5. The Pennsylvania Rules of Evidence apply to all trial, hearing and proceedings which begin on or after October 1, 1998 and apply

to this trial, which occurred in June of 1999. Neither the parties nor the trial court discuss the Pennsylvania Rules of Evidence, which are instructive in resolving this dispute.

6. *Commonwealth v. Spiewak,* 533 Pa. 1, 617 A.2d 696 (1992); *Gemstar Corp. v. Department of Envtl. Protection,* 726 A.2d 1120 (Pa. Cmwlth.1999).

7. *Commonwealth v. A.W. Robl Transp.,* 747 A.2d 400 (Pa.Super.2000).

proven (duty, standard of care, breach of duty [negligence], causation, damages), then the testimonial evidence must be permitted, unless otherwise excluded. Here, the offer of proof by Appellant indicates that the testimony would be relevant to the standard of care and notice provisions relating thereto required by the Political Subdivision Tort Claims Act.

Trial Court does not reason that the witness' testimony was irrelevant. Instead, the pre-exclusion of the witness' testimony was based upon the premise that the witness was not an "expert" because the witness was only going to testify to the facts involving the operation of the Conflict Monitor without giving opinion testimony required by the trial court. Trial Court has presumed that because this witness would not provide "an opinion", that he is not considered "an expert." The basis for Trial Court's ruling, which Appellant appeals, is that a witness who is not providing an opinion is, therefore, not an expert regardless of specialized skill, knowledge, training, experience or education. This premise is specifically addressed by the Pennsylvania Rules of Evidence regarding witnesses, generally, and expert witnesses, specifically.

Every person is competent to be a witness unless otherwise provided by statute or by the Rules of Evidence. Pa.R.E. 601. A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Pa. R.E. 602.

More particularly, if the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Pa. R.E. 701, *comment*, (lay opinion may embrace the ultimate issue, but trial judge may exclude the opinion if the trial judge decides that it would not be helpful or would confuse, mislead or prejudice the jury or would waste time.) *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978).[8]

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion *or otherwise*. Pa.R.E. 702. "Much of the literature assumes that experts testify only in the form of an opinion. The language, 'or otherwise' reflects the fact that experts frequently are called upon to educate the trier of fact about the scientific or technical principles relevant to the case." Pa. R.E. 702, *comment*.[9]

"The test to be applied when qualifying a witness to testify as an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine." Pa.R.E. 702, *comment* (citing *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 480–81, 664 A.2d 525, 528 (1995)).

In support of its position to affirm the trial court, City cites the recent decision in *Young v. Department of Transportation*, 560 Pa. 373, 744 A.2d 1276 (2000), which concluded that the lay witnesses presented, (other drivers in the traffic jam), did not possess sufficient knowledge of the placement of traffic signs and therefore,

---

8. The Rules of Evidence now specifically provide that expert testimony is permitted on the ultimate issue. Pa. R.E. 704.

9. Here, it is understandable that eliciting voluntary opinions from the expert technician, Conrad, would be difficult, if not impossible,

in view of his position as a partner, Vice-President and General Manager of the company performing traffic signal maintenance services for the City and 100 municipalities in the traffic signal industry.

were not competent to testify and establish the legal duty of the Commonwealth without further expert testimony or evidence. *Young* is, however, factually distinguishable and also very instructive. In *Young*, mere eye witnesses clearly without any identified specialized skill, knowledge, experience, education or training in the placement of warning signs near construction sites, were not competent to testify as to whether or not warning signs should be placed over three miles from the construction site. The Supreme Court expressly noted that the testimony of an expert arose from necessity, a necessity born of the fact that the subject matter of the inquiry was one involving special skill and training beyond the ken of the ordinary layman.[10] *Young*, 744 A.2d at 1278, *citing Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967).

As distinguished from the lay witness automobile drivers describing the facts of a traffic back up in *Young*, Conrad was going to testify in the case *sub judice* about a subject matter referred to in *Young* requiring, "special skill and training beyond the ken of ordinary laymen," to wit, the mechanics of the Conflict Monitor. Consequently, Conrad, possessing such specialized knowledge, skill, training and experience was prepared to impart such knowledge to the jurors regarding the variables involved in a Conflict Monitor. From that knowledge the jurors could draw inferences that the City had notice that a dangerous double green signal could occur and that the City should reasonably have installed a Conflict Monitor to prevent its occurrence. Such testimony would be in accordance with the requirements for expert testimony and evidence set forth in *Young*. *Young* never required purely expert *opinions* to educate the jury on the subject beyond their ken, but only expert *testimony* or evidence which would help

the jury eliminate some of the variables involved there, such as flow of traffic, rate of back-up, etc., so that the jury could then establish the duty, breach or causation.

▆▆▆ Depending on the subject matter, expert testimony or evidence could be factual evidence, i.e., an explanation of the facts involved in the operation of a mechanical device which may, or may not, also require opinion evidence, depending on the simplicity or complexity of the factual testimony. In the instant case, the expert was precluded from describing any of the facts surrounding the operation of the Conflict Monitor because he would not also give an opinion that the device would never malfunction. In addition, even if there was a back-up device he was precluded from testifying unless he apparently opined that the back-up could not malfunction also which would, of course, also require proof about the back-up for the back-up *ad infinitum*.[11] Such a requirement, even if warranted, is premature without hearing the factual evidence which was proffered by Appellant. We do not, however, believe the court can impose such a burden on a party to prove that, "a possible paradox or freakish combination of circumstances" will never occur. *Fringer v. Borough of West York*, 421 Pa. 579, 582, 220 A.2d 849, 850 (1966). "A plaintiff need not exclude every reasonable possibility that could have caused an accident." *Swartz v. General Electric Co.*, 327 Pa.Super. 58, 70, 474 A.2d 1172, 1178 (1984). It is not necessary that every fact or circumstance point unerringly to liability; it is enough that there are sufficient facts which reasonably show that preponderance favors liability. *Id.*

In *Young*, therefore, the plaintiff did not proffer any expert testimony, factual or opinion, and was requesting lay witnesses without specialized knowledge or training of the subject matter of the testimony to,

---

**10.** "Ken" is a term of Scottish origin expressing the range of perception, understanding or knowledge. Merriam Webster's Collegiate Dictionary, 10th Edition, 1994.

**11.** The trial court cites no authority for this requirement and this Court's research, also, has failed to uncover any.

in effect, give testimony beyond their ken. Failure to produce expert testimony is not the issue here. Precluding expert testimony about subject matter beyond the ken of the jury is.

In the present case, Appellant is requesting that Conrad, a technician possessing highly specialized knowledge, training and experience who qualifies as an expert witness, give *factual* testimony which will provide additional information to the jury to help the jury regarding the reliability and operation of a mechanical device beyond their ken. It is only after such factual testimony by the expert that the Court can determine whether the jury then has sufficient evidence within their ken to make a decision on the existence of notice and the reasonableness of notice so as to make the traffic control dangerous without a Conflict Monitor. The reasonableness of the notice and the dangerous character of the existing signal are elements required by the Political Subdivision Tort Claims Act. The jury should make the decisions on reasonableness and dangerousness if the expert's factual testimony provides a sufficient basis for those decisions to be made within their ken. The information provided by the Appellant's witness, Conrad, may effectuate that end if not precluded beforehand.

■ Since Conrad clearly has specialized skill, training, knowledge and experience in the area of Conflict Monitors and since such testimony would help educate the jury as to whether or not the implementation of such a device would have contributed to the prevention of this accident, his testimony in this instance would qualify under the Pennsylvania Rules of Evidence as expert testimony, either in the form of opinion *or otherwise* which educates the jury and should be admissible without an opinion equivalent to a fail safe warranty.

**12.** Appellant's motion was for a new trial as to all defendants. Hughes and Pleasant never appeared or contested Appellant's motion in

The order of the trial court is vacated and the case is remanded to the trial court for a new trial consistent with this opinion.[12]

## O R D E R

AND NOW, this 7th day of August, 2000, in the above captioned matter before the Court, it is ORDERED that the November 9, 1999 order of the Court of Common Pleas of Delaware County at trial court docket 96–14023 is hereby VACATED and the matter remanded back to the trial court for a new trial consistent with this opinion.

Jurisdiction relinquished.

the trial court or in this Court. The new trial will, therefore, include all of the original defendants.