Rosalie MELLON and Dennis
Mellon, her husband

v.

CITY OF PITTSBURGH
ZOO, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1999.
Decided Oct. 13, 2000.

Virginia Spencer Scott, Pittsburgh, for
appellant.

Kim A. Bodnar, Pittsburgh, for appellees.

BEFORE: PELLEGRINI, Judge, FLAHERTY, Judge, FRIEDMAN, Judge.

FLAHERTY, Judge.

The City of Pittsburgh Zoo (City) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) granting judgment notwithstanding the verdict (JNOV) in favor of Rosalie and Dennis Mellon (Mellons). For the reasons set forth herein, we vacate and remand for reinstatement of the jury verdict.

The pertinent facts are as follows. On April 17, 1992, Rosalie Mellon visited the City Zoo with her husband and two young children. During their visit a substantial rainfall occurred. While departing, Mrs. Mellon slipped and fell on a mechanical walkway and sustained injuries to her left arm and wrist.

The City Zoo is situated on an elevated plateau with the parking area located at the base of the plateau. The City Zoo employs a people-mover type walkway to transport its patrons up and down the hillside between the parking area and the main grounds. The walkways look and function exactly like escalators only they do not contain stairs. The walking area itself is constructed of metal, which contains small groves much like an escalator. This walking surface is coated with a rough, slip resistant coating to increase traction. The walking area is flanked on each side by waist-high metal walls, on which rubber handrails are situated that move in tandem with the walkway. The walkways traverse the hill in several reciprocal incline and decline sections, which are separated by level landing areas. There are a variety of permanent signs posted at the entrance to each walkway including cautionary notices stating "Walkway slippery when wet" and "Please hold handrails when wet."

On the date in question, the mechanical walkways were functioning when Mrs. Mellon and her family arrived but had been deactivated by the time of their departure. Thus, all patrons choosing to exit via these walkways were required to walk down to the parking area. Mr. Mellon proceeded to walk down the walkway escorting their young son while carrying a stroller and camcorder. Mrs. Mellon followed carrying her toddler child supporting the child with her left arm and shoulder while holding onto the handrail with her right hand. After successfully descending two-thirds of the walkway, Mrs. Mellon reached one of the level landing areas where she slipped and fell breaking her fall with her left elbow. Mrs. Mellon reported her fall to City Zoo officials prior to leaving the property but she did not require immediate medical attention. Later that evening Mrs. Mellon sought treatment for her injuries at South Side Hospital.

On September 23, 1993, the Mellons filed a timely negligence action in the trial court.[1] At trial before a jury, Mrs. Mellon presented her own testimony and that of her husband and her treating physician, Dr. Bookwalter. Mrs. Mellon testified regarding the nature of the moving walkway and its wet, slippery condition following the rainfall on the date of her injury. Mr. Mellon's testimony corroborated his wife's rendition of events. Dr. Bookwalter's deposition testimony established that Mrs. Mellon sustained mild ulnar and median nerve injuries along with carpal tunnel syndrome and tardy ulnar nerve palsy in her left arm and wrist. The Mellons also presented the testimony of attorney William Weiler who represented Edmund Rafalko in a similar negligence action against the City for a slip and fall on the walkway that occurred twenty minutes prior to Mrs. Mellon's fall. Attorney Weiler testified that, through discovery in Rafalko's action, the City provided him with six incident

---

1. Following Mrs. Mellon's testimony on direct in the original trial, a mistrial was declared for reasons that are not of record and are not relevant to this appeal.

reports detailing previous accidents occurring on the walkway under similar wet conditions.[2]

The City offered the testimony of Ms. Terry DeIuliis, administrative assistant to the director. Ms. DeIuliis testified that on April 17, 1992, there were at least two signs warning patrons that the walkway was slippery when wet and that the City Zoo had previously applied a slip-resistant coating to the walkway. Ms. DeIuliis also testified that City Zoo attendance in 1991 and 1992 was approximately 500,000 and 550,000, respectively. The City concluded its evidence with submission of a climatological report showing that .65 inches of rain fell in Pittsburgh on April 17, 1992.

Following its charge regarding determination of witness credibility, the burden of proof and the duty of care owed to business invitees, the trial court charged the jury regarding the existence of a dangerous condition in pertinent part as follows:

> To permit a recovery against the Pittsburgh Zoo, plaintiffs must first prove that the condition of the walkway at the zoo which Mrs. Mellon claims caused her injury is, in fact, a dangerous condition. To prove this, Mrs. Mellon's injury must have been one that was reasonably foreseeable in view of the facts and circumstances surrounding the condition at issue. If you determine that a dangerous condition existed within the walkway on the day of Mrs. Mellon's accident, the zoo may not be liable unless Mrs. Mellon has first proven that the zoo was given notice of the specific condition.

(Trial Transcript at 367–68, R.R. at 151a–52a).

The trial court's jury charge provided further instruction regarding the elements of negligence, the affirmative defense of contributory negligence and the determination of damages. (Trial Transcript at 368–74, R.R. at 152a–58a). The trial court provided the jury with a set of interrogatories to guide their deliberations, which included the following:

> Question 1: Do you find that there was a dangerous condition of the Pittsburgh Zoo walkway on the date plaintiff claims to have fallen?
>
> Yes _____ No _____
>
> If you answered question 1 "no", the plaintiff cannot recover and you should not answer any further questions and should return to the courtroom.

(Interrogatories to the Jury, R.R. at 210a).

The jury unanimously answered this first interrogatory in the negative indicating their factual determination that the walkway did not present a dangerous condition. The trial court then entered a verdict in favor of the City. Thereafter, the Mellons filed a motion for post-trial relief requesting that the trial court grant a new trial, or alternatively, that JNOV be rendered in her favor. By order dated June 30, 1998, the trial court entered an order directing a verdict on the dangerous condition issue in favor of the Mellons and ordering a new trial limited to the issue of damages. The instant appeal followed.

The City presents three issues on appeal. First, whether the trial court erred by invading the jury's role as fact-finder and arbiter of credibility. Second, in ordering a new trial limited to the question of damages, whether the trial court erred by resolving all fact and credibility questions regarding the remaining elements of negligence in favor of the Mellons. Third, whether the trial court erred in granting JNOV where the Mellons failed to pre-

---

**2.** The trial court excluded direct evidence of prior patron falls on the City Zoo's moving walkway to prove notice of a dangerous condition. However, the trial court permitted attorney Weiler to testify regarding the incident reports he obtained during the discovery process in Rafalko's action. Attorney Weiler was not permitted to testify regarding the specifics of the six prior falls on the walkway. The trial judge felt compelled to adhere to the previous judge's ruling permitting attorney Weiler's testimony prior to declaration of a mistrial. (Mellon's Brief, footnote 4, at 14).

serve the grounds for such an action prior to submission of the case to the jury.

 Initially we note that this case arises under what is commonly called the Political Subdivision Tort Claims Act (Tort Immunity Act), which grants immunity to local government agencies for their negligence unless their actions fall within enumerated exceptions and would otherwise subject them to liability.[3] The moving walkway at issue falls under the real property exception, which provides that a local agency may be liable for its employees' or its own negligence related to the "care, custody or control of real property" in its possession.[4] In order to make out a negligence claim under the real property exception of the Tort Immunity Act, the injured party must prove, *inter alia*, that their injury resulted from a dangerous condition arising from the care, custody and control of the real property by a local government agency. *Martin v. City of Philadelphia*, 696 A.2d 909 (Pa.Cmwlth.1997). Articles that are permanently affixed to the real property, such as the moving walkway at issue here, are subject to the care, custody and control requirements under 42 Pa.C.S. § 8542(b)(3). *Blocker v. City of Philadelphia*, 729 A.2d 187 (Pa.Cmwlth.1999).

 Turning to the merits of the instant appeal, our review of the trial court's order granting the Mellons' post trial motion for JNOV is limited to determining whether the trial court abused its discretion or committed legal error. *Primiano v. City of Philadelphia*, 739 A.2d 1172 (Pa. Cmwlth.1999). The Pennsylvania Supreme Court summarized the relevant con-

siderations regarding the grant of JNOV as follows:

In reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Broxie v. Household Finance Company*, 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). *See also, Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970) and *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979). Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. *See Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980) and *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). Further, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Brown v. Shirks Motor Express*, 393 Pa. 367, 375, 143 A.2d 374, 379 (1958).

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, *Tremaine v. H.K. Mulford Co.*, 317 Pa. 97, 176 A. 212 (1935), and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, *Cummings v.*

---

**3.** Sections 8541–8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542.

**4.** Section 8541 relating to governmental immunity generally, provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. § 8541.

Section 8542(b)(3) provides in pertinent part:

(b) Acts which may impose liability. The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . .

(3) Real property. The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

42 Pa.C.S. § 8542(b)(3).

*Nazareth Borough*, 427 Pa. 14, 233 A.2d 874 (1967). With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992).

The City first argues that the trial court erred by failing to review the evidence, and all inferences drawn therefrom, in a light most favorable to the prevailing party. The City asserts that had the trial court complied with this well-settled tenet, it follows that reasonable minds could find that no dangerous condition arose from its care, custody and control of the moving walkway. The City further contends that the trial court abused its discretion by resolving, as a matter of law, the fact question pertaining to the existence of a dangerous condition, a determination properly within the province of the jury. We agree and reject the Mellons' argument that the uncontroverted evidence established that liability existed as a matter of law.

 It is well settled that the issue of whether a dangerous condition exists is not a question of law for the court but rather a question of fact for the jury to resolve. *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000); *Kilgore v. City of Philadelphia*, 553 Pa. 22, 717 A.2d 514 (1998); *Department of Transportation v. Patton*, 546 Pa. 562, 686 A.2d 1302 (1997). The court's role in reviewing a jury's factual determinations is strictly limited as discussed by the Supreme Court in *Moure*, above. Our review of the record reveals that the jury was presented conflicting evidence regarding the existence of a dangerous condition

arising from the City Zoo's care, custody and control of the moving walkway. On the one hand, the jury had to consider the Mellons' testimony and that of attorney Weiler regarding the six incident reports detailing previous accidents occurring on the walkway under similar wet conditions. On the other hand, the jury had to consider the City Zoo's application of a slip resistant coating to the walkway's surface and the fact that only a fraction of one percent of the approximate one-half million annual City Zoo patrons reported falling on the walkway. Where there is any dispute created by the evidence, a court is not permitted to decide the issue. *Id.* Moreover, it is clear to this Court that reasonable minds could resolve this conflicting evidence, and the credibility determination inherent in the factual determination process, in favor of the City. As evidence of this point, we need look no further than the twelve reasonable minds that comprised the jury below, which unanimously resolved all conflicts concerning the existence of a dangerous condition in favor of the City. Obviously, if the trial judge were a member of the jury, the vote would not have been unanimous. However, as noted in *Moure*, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Moure*, 529 Pa. at 402, 604 A.2d at 1007 quoting *Brown v. Shirks Motor Express*, 393 Pa. 367, 375, 143 A.2d 374, 379 (1958).

Accordingly, we conclude that the trial court erroneously usurped the fact-finding function of the jury. The trial court's order dated June 30, 1998 is hereby vacated and we remand for reinstatement of the jury verdict. Having sustained the City's first appeal issue, we need not reach its final two appeal issues.

## ORDER

AND NOW, this 13th day of October, 2000, the order of the Court of Common Pleas of Allegheny County dated June 30, 1998 is hereby vacated and we remand for reinstatement of the jury verdict.

Jurisdiction relinquished.