PENNSYLVANIA TURNPIKE
COMMISSION Plaintiff,

Commonwealth of Pennsylvania,
Department of Transportation,
Intervenor Plaintiff,

v.

NATIONWIDE TRUCKING SER-
VICES, INC. Defendants/Third–
Party Plaintiffs,

v.

Atlantic Container Line, Senking Work,
GMBH, and Robert Heilmann–Spedi-
tion, GMBH, Third–Party Defendants.

and

Tryp–Baltica FORSIKRING
a/s/o Central Finishing
Systems, Plaintiff,

v.

Nationwide Trucking Services, Inc.;
Stick Chavez Quiocson; and Robert
Heilmann–Spedition, GMBH, Defen-
dants/Third Party Plaintiffs,

v.

Atlantic Container Line; and Senking
Werk, GMBH, Third Party
Defendants.

No. Civ.A. 3:00–176J.

United States District Court,
W.D. Pennsylvania.

Jan. 22, 2004.

Albert C. Peters, II, Harrisburg, PA, Leonard Fornella, Heintzman Warren, The Gulf Tower, Pittsburgh, PA, for Plaintiff.

Richard G. Lewis, Kevin R. Peck, Jones, Gregg, Creehan & Gerace, Pittsburgh, PA, James M. Burton, Pittsburgh, PA, for Defendant.

William F. Goodrich, Goodrich & Goodrich, Pittsburgh, PA, for Third–Party Plaintiff.

Beth A. Lazzara, Goodrich & Goodrich, Pittsburgh, PA, for Third–Party Plaintiff/Defendant.

Daniel C. Lawson, Thomas A. Berret, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, William A. Gray, Vuono & Gray, Pittsburgh, PA, Marc A. Rubin, Hyman & Kaplan, Miami, FL, for Third–Party Defendant.

### MEMORANDUM OPINION AND ORDER

GIBSON, District Judge.

This case comes before the Court on Plaintiff's, Pennsylvania Turnpike Commission ("Commission"), Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. (Document No. 148). Plaintiff seeks summary judgment with regard to Defendants', Nationwide Trucking Services, Inc. ("Nationwide") and Stick Chavez Quiocson ("Quiocson"), claims, and Plaintiff further seeks summary judgment with regard to Plaintiff's, Tryg–Baltica Forsikring ("Tryg–Baltica"), claims.[1] Specifically, the Commission alleges that summary judgment should be granted for the following two reasons: the Commission is a government agency and is entitled to sovereign immunity; and Nationwide, Quiocson, and Tryg–Baltica failed to bring their claims against the Commission within the statute of limitations. In consideration of the Commission's Motion for Summary Judgment, Nationwide and Quiocson's Brief in Opposition to the Commission's Motion for Summary Judgment, and Tryg–Baltica's Brief in Opposition to the Commission's Motion for Summary Judgment, the Court denies the Commission's Motion for Summary Judgment for the following reasons.

### FACTUAL AND PROCEDURAL BACKGROUND

On or about December 15, 1998, Quiocson was operating a tractor-trailer on behalf of Nationwide on the Pennsylvania Turnpike en route from Baltimore, Maryland, to New Kensington, Pennsylvania. (Document Nos. 149, 155, 156).[2] Quiocson was hauling a water extraction press, which is used in commercial laundry operations ("cargo"),[3] to Central Finishing Sys-

---

1. Tryg–Baltica, a consignee of the commercial laundry press ("cargo") hauled by Nationwide and Quiocson, filed a complaint regarding the accident that gave rise to the case *sub judice* against Nationwide and Quiocson to recover damages to the cargo. Tryg–Baltica's complaint was consolidated at Civil Action No. 3: 00–176J.

2. Quiocson owned the tractor, and the trailer was owned by Atlantic Container Line ("ACL"), the Third–Party Defendant. (Document No. 155).

3. The cargo was shipped by SenkingWerk, GMBH, and Robert Heilmann–Spedition, GMBH, Third–Party Defendants to/through Atlantic Container Line. (Document No. 155). Robert Heilmann–Spedition, GMBH was the

tems in New Kensington, Pennsylvania. (Document No. 156). Tryg–Baltica was the insurer of Central Finishing Systems, the owner and consignee of the cargo. *Id.*

Quiocson operated the tractor-trailer on the Pennsylvania Turnpike which has a statutory maximum height of 13 feet 6 inches for vehicles traveling on that roadway. 75 Pa.C.S.A. § 4922. (Document No. 149). He testified that he did not measure the height of the cargo when he picked up the trailer at the Nationwide terminal. (Document No. 149).[4] The Commission alleges that Quiocson had a duty to measure the height of his load when he picked up the trailer at the Nationwide terminal. (Document No. 149). Nevertheless, Quiocson managed to enter onto the Pennsylvania Turnpike at the Breezewood Interchange without detection by the height measuring device, known as a photogating tower. (Document No. 155). Quiocson stated in his deposition taken on August 13, 2002 that the Pennsylvania Turnpike has sensors which would prevent a tractor-trailer from entering onto the Turnpike if the load violated the statutory height requirement. (Document No. 156). Yet, on or about December 15, 1998 when he entered the turnpike, no such alarm was triggered. *Id.*

As Quiocson traveled westbound on the Turnpike, the cargo on his tractor-trailer struck an overhead bridge near milepost 110.12, by the Somerset Interchange. (Document Nos. 149, 155). All parties to this civil action agree that the "subject bridge herein was higher than 13 feet 6 inches." (Document No. 155). Subsequently, Tryg–Baltica hired a marine sur-

veyor to determine the extent of damages to the cargo. (Document No. 156).

All parties agree that damages were incurred to the bridge owned by the Commission as a result of the collision. (Document No. 155). The amount of the damage to the bridge has been stipulated to as well. *Id.* However, the legal cause has been in dispute since the Commission initiated this civil action. *Id.*

Essentially, the Commission alleges that it was Nationwide and Quiocson's negligence in failing to measure the tractor-trailer and in violating Pennsylvania's statutory height requirement that was the legal cause of the collision. (Document No. 149). Conversely, Nationwide and Quiocson argue that the non-functioning photogating tower owned by the Commission is the legal cause of the collision. (Document No. 155). Plaintiff, Tryg–Baltica, in its consolidated cause of action also alleges that the failure of the photogating tower to detect the over-sized load is one of the legal causes of the accident. (Document No. 156).

Subsequent to the countersuit of Nationwide, Quiocson, and Tryg–Baltica against the Commission, the Commission filed a Motion for Summary Judgment. (Document No. 148).

## DISCUSSION

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

entity responsible for the packaging of the container in which the cargo was shipped. (Document No. 156).

**4.** Nationwide and Quiocson argue that ACL, the party who placed the cargo onto one of its standard trailers in Baltimore, Maryland,

knew, or should have known that a lowboy trailer should have been used in order to meet the statutory height requirement of 13 feet 6 inches to travel on the Pennsylvania Turnpike. (Document No.155).

material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505. In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

To demonstrate entitlement to summary judgment, the moving party is not required to refute the essential elements of the cause of action. The moving party needs only to point out the absence or insufficiency of the evidence offered in support of those essential elements. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once that burden has been met, the non-moving party must identify affirmative evidence of record that supports each essential element of his cause of action.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

It is on this standard that the Court has reviewed Plaintiff's motion.

## Statute of Limitations

 The court applies state substantive law when federal jurisdiction is based on diversity of citizenship. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 79–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A state statute of limitations is considered substantive law within the purview of *Erie Railroad. Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 552 (3d Cir. 1985) ("statutes of limitations are considered substantive"). Additionally, "state tolling principles are generally to be used by a federal court when it is applying a state limitations period." *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991) (quoting *Vernau v. Vic's Market, Inc.,* 896 F.2d 43, 45 (3d Cir.1990)).

 The parties have agreed that Pennsylvania law governs this civil action. The applicable statute of limitations for actions involving property damage is 42 Pa.C.S.A. § 5524. Under this Pennsylvania statute, a party must initiate its claim within two years from the time of the date of the injury. *Ayers v. Morgan,* 397 Pa.

282, 154 A.2d 788 (1959) ("The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.") If a party has failed to file an action within the prescribed statutory period, then the party is barred from bringing suit "unless it is established that an exception to the general rule applies which acts to toll the running of the statute." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983).

 One such exception to the general rule is the discovery rule. *Pocono International Raceway, Inc.,* 468 A.2d at 471. The application of the discovery rule in Pennsylvania to a motion for summary judgment is as follows:

> It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period.

*Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). It has been held that lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. *Pocono International Raceway, Inc.,* 468 A.2d at 471. However, the discovery rule provides that where the existence of the injury *or its cause* is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, then the limitations period does not begin to run until the discovery of the injury or cause is reasonably possible. *Schaffer,* 410 Pa. at 406, 189 A.2d 267; *Pocono,* 468 A.2d at 471. (emphasis added).

 Whether the statute has run on a negligence claim is usually a question of law for the trial judge to determine, but where the issue involves a factual determination, the factual determination is for the jury to decide. *Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 142, 153 A.2d 477, 481 (1959); *Szpynda v. Pyles,* 433 Pa.Super. 1, 639 A.2d 1181, 1184 (1994). For example, the point at which the complaining party should reasonably have been aware of the cause of the injury is generally an issue of fact to be decided by the jury. Alternatively, when the facts are so clear that reasonable minds cannot differ, then the commencement of the limitations period should be determined as a matter of law by the trial judge. *Sadtler v. Jackson–Cross Co.,* 402 Pa.Super. 492, 501, 587 A.2d 727, 732 (1991).

 The issue in the case *sub judice* is whether Nationwide, Quiocson, and Tryg–Baltica were reasonable in their original belief that the property damages were caused when the cargo, which entered the Turnpike under 13 feet 6 inches, increased in height during the journey, (Document Nos. 155 and 156) rather than a claim that the photogating tower failed to detect the oversized cargo before entering onto the Turnpike. If Nationwide, Quiocson, and Tryg–Baltica reasonably believed that the collision was caused by the height of the cargo increasing during transit, then the discovery rule should toll the statute of limitations as they claim. If, however, any diligent persons in their position would have investigated to determine whether the photogating tower was operative on that particular day, then the counterclaims would be barred.

Nationwide, Quiocson, and Tryg–Baltica contend that because (1) Quiocson's deposition testimony, taken on August 13, 2002, revealed that no alarms sounded when he entered onto the Turnpike; (2) an expert report, dated December 10, 2002, concluded that the cargo would have been greater in height than 13 feet 6 inches when it

entered onto the Turnpike and that the photogating towers failed to detect the size of the cargo; and (3) they had no knowledge that the Commission may have been responsible for the accident until after the Commission responded to Nationwide and Quiocson's Interrogatories (Document Nos. 155 and 156), a jury could determine that they acted reasonably with regard to whether the Commission was contributorily negligent in the collision. The Court agrees with Nationwide, Quiocson, and Tryg–Baltica that a genuine issue of material fact exists as to when they should have reasonably become aware that the cause of the accident may have been the result of a malfunctioning photogating tower. Therefore, the Court denies the Commission's Motion for Summary Judgment which is based upon the premise that the claims of Nationwide, Quiocson, and Tryg–Baltica were filed after the two-year statute of limitations had expired.

**Sovereign Immunity**

**1. Raising the defense of sovereign immunity in a motion for summary judgment**

The Court's jurisdiction is based on the diversity of the parties under 28 U.S.C. § 1332. In *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court held that a federal court sitting in diversity must apply the substantive law of the state where the federal court is located, and it may apply federal procedural law. In the case *sub judice*, the Court must determine the threshold question of whether the Commission can procedurally raise sovereign immunity as a defense in a summary judgment motion.

Under federal procedure, the federal courts have repeatedly concluded that an Eleventh Amendment immunity defense has jurisdictional attributes, and thus it may be raised at any stage of the proceedings. *See Calderon v. Ashmus*, 523 U.S. 740, 745 n. 2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998); *United States v. Bein*, 214 F.3d 408, 412 (3d Cir.2000); *S.C. ex rel. C.C. v. Deptford Tp. Bd. of Educ.*, 248 F.Supp.2d 368 (D.N.J.2003). However, it has also been held that a "State may waive the defense of sovereign immunity through voluntary appearance and participation in litigation." *S.C. ex rel. C.C.*, 248 F.Supp.2d at 382; *see Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir.1997), aff'd, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). For example, in *Simmons v. City of Philadelphia*, 1990 WL 2192 (E.D.Pa.1990) the district court concluded that the City, by failing to raise the immunity argument in support of its Rule 50(a) motion for a directed verdict, had waived that argument as a ground for granting its Rule 50(b) motion for post-trial relief. The Court of Appeals then decided the issue of whether the City had preserved the defense of sovereign immunity on appeal. *Simmons v. City of Philadelphia*, 947 F.2d 1042 (C.A.3 Pa.1991). Ultimately the Court of Appeals in *Simmons* held the following:

> Our federal waiver precepts, however, conflict with Pennsylvania law concerning the City's right to raise its immunity argument on appeal. In [*In re Upset Sale of Properties (Skibo )*, 522 Pa. 230, 560 A.2d 1388 (1989) ] the Pennsylvania Supreme Court held that governmental immunity is 'an absolute defense' that cannot be waived by negligence or agreement and that 'is [not] subject to any procedural device that could render a governmental agency liable beyond the exceptions granted by the legislature.' 522 Pa. at 232, 560 A.2d at 1389.

\* \* \* \* \* \*

Given this conflict between federal procedure and *Skibo's* holding that an immunity defense cannot be waived, it is necessary to determine which controls appealability of the City's immunity argument. It is well established that, although state law governs the decision of substantive issues in federal diversity actions and in pendent state claims, the Federal Rules of Civil Procedure control the resolution of procedural issues. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (citation omitted). It is equally settled, however, that 'choices between state and federal law are to be made not by application of any automatic 'litmus paper' criterion,' but rather by reference to the principles of outcome determination and the deterrence of forum shopping that underlie *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hanna*, 380 U.S. at 467, 85 S.Ct. at 1141. In determining whether the Pennsylvania Supreme Court's rule prohibiting procedural waiver of a governmental immunity defense to liability is substantive for *Erie* purposes, and therefore must prevail over [federal] waiver precepts ... the relevant inquiry is whether application of the [state] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State ... or whether application of the rule would

have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause plaintiff to choose the federal court. (citations omitted).

*Simmons*, 947 F.2d at 1085.

In the case *sub judice*, the Court determines that the application of Pennsylvania's rule prohibiting the waiver of the defense of sovereign immunity would make such an important difference to the result of the litigation that not permitting the Commission to raise it as a defense would unfairly discriminate against it. *See also Williams v. City of Philadelphia*, 131 Pa. Cmwlth. 71, 569 A.2d 419, 421 ("[W]here a trial judge overrules a preliminary objection without issuing an opinion, a second trial judge of the same court may grant a motion on the pleadings even if the basis of the motion is identical to the preliminary objections."); *Frazier v. Southeastern Pennsylvania Transp. Authority*, 868 F.Supp. 757 (E.D.Pa.1994) ("[T]he immunity defense is not waivable and may be raised even after a preliminary objection raising the defense has been overruled.") For this reason, the Court holds that the Pennsylvania Supreme Court's rule in *Skibo* that a governmental immunity defense is not procedurally waivable must be regarded as substantive for *Erie* purposes and must be applied in this case to permit the Court's consideration of whether the Commission is entitled to the defense of sovereign immunity.[5]

---

5. The Court notes that the Commission raised the defense of sovereign immunity in its Response in Opposition to Motion to Amend Complaint to Add Defendant, Pennsylvania Turnpike Commission by Tryg–Baltica (Document No. 144), and its Amended Response in Opposition to Motion to Amend Responsive Pleadings to Assert a Counterclaim Against Plaintiff, Pennsylvania Turnpike Commission by Stick Chavez Quiocson and Nationwide Trucking Inc. (Document No. 116). Then, the Commission filed a Motion for Reconsidera-

tion of Order (Document No. 115) which granted the following motions: Motion by Nationwide Trucking and Stick Chavez Quiocson to Amend Responsive Pleadings to Assert a Counterclaim Against Plaintiff, Pennsylvania Turnpike Commission (Document No. 106), and Motion by Tryg–Baltica to Amend Complaint to Add Defendant, Pennsylvania Turnpike Commission (Document No. 108). The Court granted the Commission's Motion for Reconsideration and held the fol-

## 2. Applying state or federal law to determine sovereign immunity

■ As mentioned above, state substantive law applies to suits in which federal jurisdiction was based on diversity of citizenship. *See Erie.* In *Harris v. Pennsylvania Turnpike Commission,* 410 F.2d 1332, 1333 (C.A.Pa.1969), the Court of Appeals determined that whether or not an agency is the alter ego of the state, and therefore, immune from suit by virtue of the Eleventh Amendment is a question of federal, not state, law. *See Pennsylvania Turnpike Commission v. Welsh,* 188 F.2d 447 (3d Cir.1951). Nevertheless, the Court of Appeals also held the following:

> [A] suit against the Pennsylvania Turnpike Commission was not a suit against the Commonwealth and that the Commission was a citizen of a state for purposes of diversity jurisdiction. Even when diversity jurisdiction lies, *however, a state instrumentality will be immune from tort liability if such immunity is granted in state courts.*

*S.J. Groves & Sons Co. v. New Jersey Turnpike Authority,* 268 F.Supp. 568, 571 (D.N.J.1967) (emphasis added); *see also Gerr v. Emrick,* 283 F.2d 293, 294 (3d Cir.1960); *Lovrinoff v. Helms Exp., Inc.* 309 F.Supp. 145 (D.C.Pa.1970). Therefore, since this is an action brought in diversity the Court will apply Pennsylvania law in determining whether the Commission ·is entitled to sovereign immunity.[6]

## 3. Determining whether the Commission is entitled to sovereign immunity

■ In· *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A.2d 199 (1962), the Supreme Court of Pennsylvania held that the Commission was an instrumentality of the State so as to entitle it to sovereign immunity from liability for its negligent acts. In rendering this decision, the Supreme Court of Pennsylvania confirmed prior decisions by the majority of lower Pennsylvania courts and refused to acknowledge prior conclusions reached by the majority of Federal District Courts and the Court of Appeals for the Third Circuit. *See also Thomas v. Baird,* 433 Pa. 482, 252 A.2d 653 (1969) (the court reaffirmed· its holding in the *Rader* case).

---

lowing without any discussion of the Commission's alleged defense of sovereign immunity:

> The court shares plaintiff's frustration with its inability to resolve this matter in which the liability of the primary defendant is relatively straight-forward. We also question the legal merits of claims against the Plaintiff Turnpike Commission under the theories pled by several parties now. Plaintiff may be correct in its assertion that it had no duty to advise Mr. Chavez Quiocson that his truck was over the statutory maximum height for vehicles on Pennsylvania highways. However, we think the legal merits of Tryg–Baltica's (and Nationwide/Chavez Quiocson's as well) are better determined after full briefing pursuant to Rule 56. Having considered both the Motion for Leave to Amend and Movant's opposition thereto, this 6th day of January, 2003, it is hereby ORDERED that Tryg–

Baltica Forsikring's Motion for Leave to Amend. Complaint to Add Defendant Pennsylvania Turnpike Commission is GRANTED.

Additionally, the Commission raised the defense of sovereign immunity in its Response by Pennsylvania Turnpike to Counter Claim by Stick Chavez Quiocson and Nationwide Trucking, Inc. (Document No. 120).

**6.** This Court acknowledges the most recent decision of the Court of Appeals in *Christy v. Pennsylvania Turnpike Commission,* 54 F.3d 1140 (C.A.3 Pa.1995). In *Christy,* a federal question jurisdiction case based on civil rights claims under 42 U.S.C. §§ 1983 and 1985, the Court of Appeals determined that the Pennsylvania Turnpike Commission was an agency that was not an "arm" of Commonwealth entitled to sovereign immunity under the Eleventh Amendment.

578

A few years later, in 1973, the Supreme Court of Pennsylvania abolished the common law doctrine of governmental immunity thereby subjecting political subdivisions to liability for the negligent performance of governmental duties. *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). Thereafter, the Supreme Court of Pennsylvania decided *Specter v. Commonwealth*, 462 Pa. 474, 341 A.2d 481 (1975). In its opinion, the court indicated that even though it would prefer to have formally revoked the immunity doctrine as it applied to local governmental bodies, it believed that it could not do so because the court viewed sovereign immunity as being mandated by the Pennsylvania Constitution. However, it was not long before the Supreme Court of Pennsylvania did abrogate the doctrine of sovereign immunity in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). In *Mayle*, the court determined that contrary to its earlier opinion in *Specter*, sovereign immunity was not constitutionally mandated, but rather it was a product of common law.

Reaction by the Pennsylvania Legislature to the holding in *Mayle* was swift. Within two and one-half months after the decision in *Mayle*, the legislature enacted a sovereign immunity statute effective September 28, 1978. See the Act of September 28, 1978, P.L. 788. Two years later, the legislature repealed and reenacted the Act dealing with sovereign immunity and reenacted the Act by Section 221(g) of JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693. This provision now appears in Chapter 85 of the Judicial Code.

Section 8501 of the Code, 42 Pa.C.S.A. § 8501, defines "Commonwealth Party" as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." However, Chapter 85 of the Code does not define "Commonwealth agency". Chapter 85 deals with sovereign, governmental, and official immunity. 42 Pa.C.S.A. §§ 8501–8564. "Commonwealth agency" is defined though in Section 102 of the Code, 42 Pa.C.S.A. § 102, which is the general definition section for the entire Code. Section 102 defines "Commonwealth agency" as "[a]ny executive agency or independent agency." "Independent agency" is defined in Section 102 as "[b]oards, commissions, authorities and other agencies and officers of the Commonwealth government ..." Notably, the Pennsylvania Turnpike Commission is a "commission" pursuant to 36 P.S. § 652d.[7]

Since these decisions by the Supreme Court of Pennsylvania, it has been repeatedly held or acknowledged by Pennsylvania state courts and federal district courts sitting in diversity that the Pennsylvania Turnpike Commission is indeed a state agency entitled to sovereign immunity. *See Lovrinoff v. Helms Exp., Inc.*, 309 F.Supp. 145 (D.C.Pa.1970); *Solem v. Port Authority Transp. Co.*, 1987 WL 19895 (E.D.Pa.1987); *Toombs v. Manning*, 835 F.2d 453 (3d Cir.1987); *Pennsylvania Turnpike Commission v. Jellig*, 128 Pa. Cmwlth. 171, 563 A.2d 202 (1989); *Bradley*

7. 36 P.S. § 652d provides:

**Turnpike Commission created; powers and duties; salaries**-That there is hereby created a commission to be known as the "Pennsylvania Turnpike Commission" and by that name the commission may sue and be sued, plead and be impleaded, contract and be contracted with, and have an official seal.

The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth. ...

*v. Pennsylvania Turnpike Commission,* 121 Pa.Cmwlth. 51, 550 A.2d 261 (1988); *Burcik v. Caplen,* 805 A.2d 21 (Pa.Cmwlth. 2002). Therefore, this Court determines that the Commission in the case *sub judice* is entitled to assert sovereign immunity pursuant to 42 Pa.C.S.A. § 8522.

**4. Determining whether the exceptions to sovereign immunity are applicable**

In order to overcome the defense of sovereign immunity under Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522, Nationwide, Quiocson, and Tryg–Baltica must meet two distinct requirements: (1) they must show that they possess a common law or statutory cause of action against a Commonwealth party; and (2) they must demonstrate that the cause of action falls within one of the exceptions to sovereign immunity contained in Section 8522(b). *Norbert v. Com., State Police,* 148 Pa. Cmwlth. 505, 611 A.2d 1353, 1355 (1992).

In the case *sub judice,* Nationwide, Quiocson, and Tryg–Baltica assert negligence claims against the Commission based upon the alleged failure of the photogating tower to detect the over-sized cargo. Additionally, these parties argue that three possible exceptions to the sovereign immunity rule apply to the circumstances existent in this case. Two of the exceptions are set forth in Section 8522(b)(3), (4):

> **Section 8522. Exceptions to sovereign immunity**
>
> (a) **Liability imposed.**-The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, for the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages) sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or statute creating a cause of action if the injury were caused by a person having available the defense of sovereign immunity.
>
> (b) **Act which may impose liability.**-The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> \* \* \* \* \* \*
>
> (3) **Care, custody or control of personal property.**-The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.
>
> (4) **Commonwealth real estate, highways and sidewalks.**-A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdictions of a Commonwealth agency,

except conditions described in paragraph (5).[8]

42 Pa.C.S.A. §§ 8522(b)(3), (b)(4).

Specifically, Nationwide, Quiocson, and Tryg–Baltica argue that under exception (b)(4), the photogating tower should be considered real property. Moreover, they argue that whether the photogating tower is real property is a question of fact to be determined by the jury. As such, this issue of fact precludes summary judgment. (Document Nos. 155 and 156). Under exception (b)(3), the parties allege that the sensors and overheight warning system might fall within the personal property exception to sovereign immunity and that this also involves a question of fact to be decided by a jury. (Document No. 156).

The third exception that the parties assert may be applicable in the case *sub judice* is 42 Pa.C.S.A. § 8542(b)(4), which states:

(4) **Trees, traffic controls and street lighting.**-A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstance of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S.A. § 8542(b)(4). (Document No. 155).[9]

■ Initially, the Court must determine whether it is a matter of law for the court to decide or a matter of fact for the jury to decide whether the photogating tower falls within one of the above-mentioned exceptions to sovereign immunity.

In *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), the Pennsylvania Supreme Court referred to *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989) for the rule that the "duty of care a Commonwealth agency owes to those using its real estate is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or

---

**8.** 42 Pa.C.S.A. § 8522(b)(5) states:

(5) **Potholes and other dangerous conditions.**-A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph.

**9.** 42 Pa.C.S.A. § 8542 creates exceptions to governmental immunity. Governmental immunity generally provides that no local agency or an employee thereof "shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof …" 42 Pa.C.S.A. § 8541. The Pennsylvania Supreme Court has indicated that both immunity statutes, 42 Pa.C.S.A. § 8522 and 42 Pa. C.S.A. § 8542, are to be interpreted consistently. *Crowell v. City of Philadelphia*, 531 Pa. 400, 410 n. 8, 613 A.2d 1178, 1183 n. 8 (1992) (citing *Snyder v. Harmon*, 522 Pa. 424, 435 n. 7, 562 A.2d 307, 312 n. 7 (1989).) Therefore, case law applicable to governmental immunity would apply equally to sovereign immunity to determine whether the exceptions apply. *Walker v. Philadelphia Housing Authority*, 158 Pa.Cmwlth. 497, 631 A.2d 1117, 1118 n. 1 (1993).

reasonably foreseen to be used." *Bendas,* 531 Pa. at 183, 611 A.2d 1184. Under the real property exception to sovereign immunity, the Pennsylvania Supreme Court has also held that the "artificial condition or defect of the land *itself* must cause the injury and not merely facilitate the injury by the acts of others." *Peterson v. Philadelphia Housing Authority,* 154 Pa. Cmwlth. 309, 623 A.2d 904, 906 (1993) (citing *Mascaro v. Youth Study Center,* 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987)) (emphasis in original). The clear intent to insulate government agencies from exposure to tort liability means that the exceptions to immunity are to be strictly construed. *Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184, 185–186 (1994).

In the case *sub judice,* Nationwide, Quiocson, and Tryg–Balitica rely in part upon the real property exception and base their claim upon the Commission's alleged failure to maintain the photogating tower. They contend that the photogating tower may constitute a "fixture" and is, therefore, real property.

In *Gore v. Bethlehem Area School District,* 113 Pa.Cmwlth. 394, 537 A.2d 913 *petition for allowance of appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988), the Commonwealth Court noted that "a 'fixture' is an article in the nature of personal property that has been so annexed to the realty that it is regarded as part and parcel of the land." *Id.* at 398, 537 A.2d 913 (citing Black's Law Dictionary 574 (5th Ed.1979)). In *McCloskey v. Abington School District,* 101 Pa.Cmwlth. 110, 515 A.2d 642 (1986), the Commonwealth Court also noted that

the following factors determine whether a chattel is a fixture when affixed to the land:

(a) the manner in which it is physically attached or installed;

(b) the extent to which it is essential to the permanent use of the building or other improvement; and

(c) the intention of the parties who attached or installed it.

*Id.* 101 Pa.Cmwlth. at 114, 515 A.2d 642. In *McCloskey,* the court also held that the third factor, the intended use of the property by the parties, is a matter for the fact finder rather than something that can be decided as a matter of law by the court. *Id.* 101 Pa.Cmwlth. at 115, 515 A.2d 642; (cited in *Peterson v. Philadelphia Housing Authority,* 154 Pa.Cmwlth. 309, 623 A.2d 904 (1993))(questions of fact precluded summary judgment on issues whether missing bannister and inadequate stairwell lighting were defects in real property and whether housing authority was entitled to sovereign immunity); (*Mellon v. City of Pittsburgh Zoo,* 760 A.2d 921 (Pa.Cmwlth.2000))(trial court abused its discretion by resolving, as a matter of law, the fact question pertaining to the existence of a dangerous condition, a determination properly within the province of the jury).

■ It is well settled Pennsylvania law that the issue of whether a dangerous condition exists is not a question of law for the court but rather a question of fact for the jury to resolve.[10] *Dean v. Department*

---

**10.** The Court notes that in *Mascaro v. Youth Study Center,* 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987), the Pennsylvania Supreme Court held that under the real property exception, the artificial condition or defect of the land *itself* must cause the injury and not merely facilitate the injury. (emphasis added). Later, in *Crowell v. City of Philadelphia,* 531

Pa. 400, 412–13, 613 A.2d 1178, 1184 (1992), the same court determined that in cases where a plaintiff is injured and brings an action against a government unit, the government unit is subjected to liability despite the presence of an additional tortfeasor *if* the government unit's actions preclude indemnity from another for injuries rendered to a third

*of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000); *Kilgore v. City of Philadelphia*, 553 Pa. 22, 717 A.2d 514 (1998); *Department of Transportation v. Patton*, 546 Pa. 562, 686 A.2d 1302 (1997). On one hand, the jury could consider the deposition testimony of Quicson that no alarm sounded from the photogating tower warning him that his cargo was oversized. On the other hand, the jury could consider evidence supporting the claim that the oversized cargo was negligently loaded without an eye toward Pennsylvania law. In any event, where there is a dispute created by the evidence, a court is not permitted to decide the issue. *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921 (Pa. Cmwlth.2000). Additionally, it is clear to this Court that reasonable minds could resolve conflicting evidence as to who was negligent in favor of different parties, and that "the credibility determination inherent in the factual determination process," could weigh in the favor of any party. *Id.* at 925. A dispute over such facts would affect the outcome of the suit under Pennsylvania law. It is not necessary for the Court to determine whether the photogating tower falls within one of the exceptions to sovereign or governmental immunity asserted by the parties as that issue is a factual determination for the jury to decide. Therefore, the Court determines that the Commission's summary judgment motion is denied and dismissed with respect to its sovereign immunity claim.

## ORDER

**AND NOW,** this 22nd day of January, 2004, after careful consideration of the Pennsylvania Turnpike Commission's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 (Document No. 148), Defendants', Nationwide Trucking Services, Inc. ("Nationwide") and Stick Chavez Quiocson ("Quiocson"), Response in Opposition to Pennsylvania Turnpike Commission's Motion for Summary Judgment, as well as Plaintiff's, Tryg–Baltica Forsikring ("Tryg–Baltica"), Response in Opposition to Pennsylvania Turnpike Commission's Motion for Summary Judgment, **IT IS HEREBY ORDERED** that Pennsylvania

person. (emphasis added). In *Crowell*, the court expounded upon the law of indemnification:

> [I]t is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important part to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent that the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.

*Id.* at 412, 613 A.2d at 1184 (citing *Builders Supply v. McCabe*, 366 Pa. 322, 325–28, 77 A.2d 368, 370–71 (1951))(emphasis in original).

The Court determines that the Commission is a concurrent tortfeasor precluding indemnity from another for injuries rendered to a third person; therefore, the Commission is subject to liability.

Turnpike Commission's Motion for Summary Judgment is denied and dismissed.